UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>NARINDER SANGHA,<br><br>Debtor. | Case No. 5:22-cv-01867-WLH<br><br>Adv. Proc. No. 6:13-ap-01171-MH<br><br>Bankr. Case No. 6:13-bk-16964-MH<br><br>**ORDER ON APPEAL** |
| NARINDER SANGHA,<br><br>Appellant,<br><br>v.<br><br>CHARLES EDWARD SCHRADER,<br><br>Appellee. | |

Before the Court is the appeal of the Judgment (AP Docket No. 561)[1] of the United States Bankruptcy Court, Central District of California (the "Bankruptcy Court"), entered on September 30, 2022. The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons set forth below, the Bankruptcy Court's Judgment is **AFFIRMED**.

---

[1] All "AP Docket" references are to the docket in the underlying adversary proceeding, 6:13-ap-01171-MH.

## I. BACKGROUND

The Bankruptcy Court detailed the extensive history of this case, which traces back to events that occurred in 2008, in its Memorandum Decision After Trial (the "Memorandum," AP Docket No. 560). The following facts are undisputed.

On March 12, 2008, Appellee Charles Edward Schrader ("Schrader") applied for a firefighter position with the City of San Jose Fire Department ("SJFD"). (*Id.* at 2). Later in 2008, Schrader began a romantic relationship with Appellant Narinder Sangha ("Sangha"). (*Id.*). The relationship "deteriorat[ed] and end[ed] amidst mutual allegations of wrongdoing" in 2009. (*Id.*). In May of 2009, SJFD began a background investigation into Schrader as part of his application process. (*Id.* at 2–3). In July of 2009, Sangha filed for a restraining order against Schrader. (*Id.* at 3). Shortly thereafter, Schrader received a conditional offer of employment from SJFD. (*Id.*). On August 12, 2009, a court issued to Sangha a six-month restraining order against Schrader. (*Id.*). On August 21, 2009, SJFD interviewed Sangha as part of its background investigation. (*Id.*). On September 4, 2009, SJFD withdrew its conditional offer of employment on the grounds that Schrader "did not pass the psychological screening portion of the recruitment process." (*Id.*). Schrader appealed the withdrawal, but his appeal was denied. (*Id.*).

On October 13, 2009, Schrader initiated a defamation[2] action against Sangha in San Francisco Superior Court. (*Id.* at 3). Schrader alleged that Sangha made false statements about him in the course of an employment background investigation. (*Id.*). On February 14, 2011, the state court granted Schrader leave to file a second amended complaint. (*Id.*). The second amended complaint asserted fourteen causes of action, all of which alleged that Sangha made defamatory statements with malice. (*Id.*).

---

[2] Like the Bankruptcy Court, this Court uses "defamation" and "slander" interchangeably throughout this opinion. (*See* Mem. at 3 n.1).

On March 4, 2011, Schrader, citing discovery abuses by Sangha, filed a motion for terminating sanctions, which the state court granted a week later. (*Id.* at 4). Sangha then obtained new counsel. (*Id.*). On April 18, 2011, the state court entered default against Sangha, and on June 2, 2011, the state court entered a default judgment against Sangha (the "Default Judgment"). (*Id.*). Under the Default Judgment, the state court awarded damages to Schrader in the amount of $1,369,633.40. (*Id.*). The damages award included punitive damages under California Civil Code § 3294 ("CC § 3294"), which allows for punitive damages in non-contract breach cases against a defendant who "has been guilty of oppression, fraud, or malice."

Sangha filed a motion to vacate the Default Judgment, which the state court denied on November 14, 2011. (Mem. at 4). Sangha did not appeal the Default Judgment. (*Id.*). He did, however, obtain a legal malpractice judgment against his first attorney, Chris Leuterio, in the amount of the Default Judgment. (Appellant's Opening Br., Docket No. 11 at 22 n.3).

On April 18, 2013, Sangha filed a Chapter 7 bankruptcy petition. (Mem. at 4). He listed the total damages he owed to Schrader under the Default Judgment as a disputed debt. (*Id.*). On April 25, 2013, Schrader filed an adversary complaint against Sangha under 11 U.S.C. § 523(a)(6), which makes debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" nondischargeable through a bankruptcy proceeding. (Mem. at 5); 11 U.S.C. § 523(a)(6).

On April 25, 2014, Schrader filed a motion for summary judgment in the adversary proceeding. (Mem. at 5). The Bankruptcy Court granted the summary judgment motion on August 7, 2014. (*Id.* at 5–6). In doing so, the Bankruptcy Court found that the state court's Default Judgment against Sangha for defamation, and specifically the punitive damages awarded for "oppression, fraud, or malice" under CC § 3264, demonstrated that the "willful and malicious" requirements of § 523(a)(6) were met. (*Id.* at 6). Further, the Bankruptcy Court determined that collateral estoppel applied to prevent Sangha from relitigating the merits of the defamation issue. (*Id.*).

The Bankruptcy Court therefore held that the debt Sangha owed to Schrader under the Default Judgment was non-dischargeable, and it entered a judgment to that effect (the "2014 Judgment," AP Docket No. 150). (*Id.*).

Sangha appealed the 2014 Judgment to the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals ("BAP"). (*Id.*). On June 11, 2015, the BAP vacated the 2014 Judgment. (*Id.*). Schrader appealed the BAP decision. (*Id.*).

On March 10, 2017, the Ninth Circuit affirmed the BAP. *In re Sangha*, 678 F. App'x 561 (9th Cir. 2017). In doing so, the Ninth Circuit relied heavily on the BAP's decision in *In re Plyam,* 530 B.R. 456 (B.A.P. 9th Cir. 2015), which was issued after the 2014 Judgment. In *Plyam*, the BAP held that a grant of punitive damages under CC § 3294 was not, in and of itself, sufficient to fulfill the "willful" prong of § 523(a)(6), which may only be satisfied upon a showing of a subjective intent to injure. 530 B.R. at 465. Rather, of the standards of intent for which for punitive damages may be awarded under CC § 3294, "[o]nly Intentional Malice and fraud … satisfy the § 523(a)(6) willfulness requirement for the purposes of issue preclusion." *Id.* On the other hand, "Despicable Malice and oppression … fail to satisfy the requisite state of mind for § 523(a)(6) willfulness." *Id.* The Ninth Circuit remanded the case to the Bankruptcy Court to

> consider whether the state court default judgment and the allegations in Schrader's second amended complaint preclude relitigation of § 523(a)(6)'s "willful" intent requirement. If the bankruptcy court determines that the allegations in the second amended complaint together with the punitive damage award preclude relitigation of § 523(a)(6)'s "willful and malicious" intent requirements, then the California state trial court default judgment in favor of Schrader is not dischargeable.

*Sangha*, 678 F. App'x at 562.

On March 15, 2019, the Bankruptcy Court issued a new order on Schrader's summary judgment motion (the "2019 Summary Judgment Order," AP Docket No. 277). The Bankruptcy Court denied summary judgment as to the "willfulness" prong of § 523(a)(6). (*Id.* at 11–12). The Bankruptcy Court stated that "in rendering default

4

judgment in Schrader's favor, the State Court necessarily found that Sangha published false and unprivileged statements about Schrader because the sole claims asserted by Schrader in the second amended complaint were for Slander *Per Se* …." (*Id.* at 10 (citation omitted)). Sangha was therefore collaterally estopped from "challenging any of the material factual issues that were raised in Schrader's State Court pleadings and which were necessary to uphold the judgment." (*Id.* (citation omitted)). Nevertheless, the Bankruptcy Court found, "knowledge of the falsity of the statements at issue is not an element of the state law cause of action" for defamation, (*id.* at 39), and the state court had not made any findings that Sangha subjectively intended to injure Schrader, (*id.* at 10–11). The Bankruptcy Court found, therefore, that the Default Judgment on its own could not support the requisite intent for "willfulness" under § 523(a)(6).

The Bankruptcy Court did grant summary judgment in Schrader's favor as to the "maliciousness" prong, however. (*Id.* at 12–14). As stated by the Bankruptcy Court, "[f]or conduct to be malicious, the creditor must prove that the debtor: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse." (*Id.* at 12 (citing *In re Su*, 290 F.3d 1140, 1143 (9th Cir. 2002)). As to the first three elements, the Bankruptcy Court stated, the state court had necessarily found by entering judgment in favor of Schrader that Sangha had (1) "uttered a false and privileged publication," (2) "which wrongful act was intentional," and (3) that "the injury to [Schrader's] reputation would have been presumed by the State Court from the falsity of the statements." (*Id.* at 12–13). While the fourth element—the absence of "just cause or excuse"—could not be gleaned from the state court's findings in the Default Judgment alone, the Bankruptcy Court found that "collateral estoppel must apply to bar relitigation of the defenses that were raised or that could have been raised by Sangha in State Court," including a "just cause or excuse" defense. (*Id.* at 13–14). The Bankruptcy Court therefore found that all four elements of the "maliciousness" prong under § 523(a)(6) were met, and it granted summary judgment as to that prong. (*Id.* at 14).

5

The Bankruptcy Court conducted two days of trial on August 24 and 25, 2021. On December 13, 2021, the Bankruptcy Court issued an order in which it questioned its own finding in the 2019 Summary Judgment Order that collateral estoppel applied to bar Sangha from raising a "just cause or excuse" defense to defamation. (Order re "Just Cause or Excuse," Docket No. 546). As the Bankruptcy Court stated, under California law,

> "[j]ust cause or excuse" is not an affirmative defense to a cause of action for slander *per se*; rather, it is an affirmative defense to a cause of action under § 523(a)(6). As such, it is not possible that "just cause or excuse" could have been actually litigated in the state court proceeding. Because the defense could not have been litigated in state court, collateral estoppel does not apply to bar the defense in this proceeding.

(*Id.* at 3). The Bankruptcy Court therefore allowed Sangha to file supplemental briefing regarding the potential application of a "just cause or excuse" affirmative defense. (*Id.* at 4). Sangha did not file any briefing regarding "just cause or excuse." (Mem. at 10).

On January 24, 2022, the Bankruptcy Court conducted a third and final day of trial. (*Id.* at 11). It issued its Memorandum on September 30, 2022. In the Memorandum, the Bankruptcy Court explained that it had "already ruled in Schrader's favor on the maliciousness prong by applying collateral estoppel" pursuant to the 2019 Summary Judgment Order, and that "the sole issue remaining is the willfulness prong." (*Id.* at 17). Once again, the Bankruptcy Court explained that the Default Judgment for slander *per se* precluded relitigation of the falsity of Sangha's statements to SJFD. The only issue at trial was whether Sangha had "knowledge of the falsity of the defamatory statements" when he uttered them. (*Id.* at 39). Sangha's knowledge of falsity mattered, the Bankruptcy Court reasoned, because a cause of action for slander *per se* "provides that injury necessarily follows" from defamatory statements intentionally made. (*Id.* at 38). Therefore, "whether the injury at issue naturally follows is no longer a question of fact. As a matter of law it has been determined that it does, and, therefore, the actor is charged with knowledge of that injury," thus fulfilling the intent to injure standard for

"willfulness." (*Id.*). In other words, if Sangha intentionally uttered defamatory statements that he knew to be false, then the intent to injure Schrader could be inferred.

The Bankruptcy Court then explained that, at trial, it was "presented with *direct evidence* that indicates that [Sangha] had knowledge of the falsity of the statements at issue." (*Id.* at 40 (emphasis in original)). The Bankruptcy Court provided the following excerpts from the trial transcript:

> [*Schrader*]: So what I'm trying to get on the record is that Mr. Sangha has personal knowledge as to the truth or the veracity of as to whether these allegations were true or false. He was a party to these allegations. He knows whether they are true or false.
> [*Sangha's*] *Counsel*: That's undisputed.
> *The Court*: Okay. So you're trying – so your point is you're trying to get him to admit that these statements were not true?
> [*Schrader*]: No. That's irrelevant.
> *The Court*: Sure.
> [*Schrader*]: What I'm trying to do is get him to admit that he has knowledge as to whether or not these are true or false.
> [*Sangha's*] *Counsel*: It's undisputed. He has knowledge that these statements are true or false.

(*Id.* at 41 (citing Trial Tr., AP Docket No. 552 at 73–74)).

> [*Schrader*]: Based on that personal knowledge, you would know whether or not that allegation was true or false, is that correct?
> [*Sangha*]: Which allegation are we talking about?
> [*Schrader*]: Well, let's start with the first one, that I had physically abused you.
> [*Sangha*]: Yes.
> [*Schrader*]: And based on that personal knowledge, you would have knowledge as to whether or not your allegation that I had verbally abused you was true or false. Is that correct?
> [*Sangha*]: Yes.
> [*Schrader*]: So do you want to stipulate to that or do you want me to through the list?
> [*Sangha's*] *Counsel*: I already have. We've already stipulated.
> *The Court*: This is a somewhat different question. So I'm not trying to get to your end game necessarily, but what Mr. Schrader is asking is that all these things you stipulated to that you have personal knowledge of –
> [*Sangha's*] *Counsel*: He would know whether they're true or false.

> *The Court*: He would know whether they're true or false.
> [*Sangha's*] *Counsel*: Yes. Yeah, I know what he's trying to do.
> *The Court*: Okay. I take it from your comment you don't have a problem stipulating to that?
> [*Sangha's*] *Counsel*: Yeah, if he has personal knowledge of something he would know of whether it's true or false.
> *The Court*: Okay. So stipulated? Okay. There you go.

(*Id.* at 42 (citing Trial Tr. at 84–85)).

Since the state court, in issuing the Default Judgment on Schrader's defamation claims, had determined Sangha's statements were false, the Bankruptcy Court determined that the above statements at trial amounted to an admission that Sangha had knowledge of the falsity of his statements. (*Id.* at 43–44). The Bankruptcy Court therefore determined that the "willfulness" element of § 523(a)(6) was met. (*Id.* at 44). Because the Bankruptcy Court previously found that Schrader had also established the "maliciousness" prong of § 523(a)(6), the Bankruptcy Court determined that Schrader was entitled to judgment in his favor. (*Id.* at 48). On September 30, 2022, the Bankruptcy Court held that Sangha's debt to Schrader under the Default Judgment was non-dischargeable and entered judgment for Schrader.

Sangha filed the instant appeal on October 24, 2022. (Notice of Appeal, Docket No. 1). The matter is now fully briefed.

**II.   DISCUSSION**

Sangha advances three arguments in support of this appeal. First, Sangha argues that the Bankruptcy Court erred by deciding the "malicious" prong of § 523(a)(6) before the "willful" prong. (Appellant's Opening Br. at 34–35). Second, Sangha argues that the Bankruptcy Court's finding of willfulness was clearly erroneous because the record shows Sangha told the truth about Schrader. (*Id.* at 35–36). Third, Sangha argues that the Bankruptcy Court abused its discretion in applying issue preclusion as to the "maliciousness" prong of § 523(a)(6). (*Id.* at 37–41). The Court addresses each argument in turn.

8

### A. Deciding Willfulness Before Maliciousness

"Willfulness" and "maliciousness" are to be evaluated separately. *See, e.g.*, *In re Delannoy*, 615 B.R. 572, 584 (B.A.P. 9th Cir. 2020), *aff'd*, 852 F. App'x 279 (9th Cir. 2021). "The 'willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct.'" *Id.* (quoting *Su*, 290 F.3d at 1142). On the other hand, "[a] malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Jercich*, 238 F.3d 1202, 1209 (9th Cir. 2001) (citation omitted). The "done intentionally" element of malice implicates a different standard of intent than willfulness because "it is the wrongful act that must be committed intentionally rather than the injury itself." *In re Sicroff*, 401 F.3d 1101, 1106 (9th Cir. 2005), *amended*, 2005 WL 843584 (9th Cir. Apr. 11, 2005).

Sangha relies heavily on the BAP's 2002 decision in *In re Thiara*, 285 B.R. 420 (B.A.P. 9th Cir. 2002), to argue that the Bankruptcy Court erred in finding malice in the 2019 Summary Judgment Order before making a finding of willfulness after trial. (*Id.* at 34–35). In *In re Thiara*, the bankruptcy court entered judgment for the appellant based on its finding that the appellee's debt for conversion was non-dischargeable under § 523(a)(6). 285 B.R. at 426. The bankruptcy court found that the "willful" prong was met because the debtor-appellee intended to take for his own use money that rightfully belonged to the creditor-appellant. *Id.* at 433. The bankruptcy court then found that malice was implied, based on a prior Ninth Circuit holding "that in the case of a conversion—referring to a conversion that is both intentional and 'willful'—'malice may be inferred from the nature of the wrongful act.'" *Id.* at 434 (quoting *In re Littleton*, 942 F.2d 551, 554 (9th Cir. 1991).

On appeal, the BAP vacated the judgment because it found the bankruptcy court had not used the correct standard for willfulness. *Id.* The bankruptcy court made "no finding … that [the debtor-appellee] intended to injure [the creditor-appellant]," nor did

9

it find that the debtor-appellee "had 'actual knowledge that harm to [the creditor-appellant] was substantially certain.'" *Id.* (quoting *Su*, 259 B.R. at 1146). Thus, the BAP held, "the bankruptcy court did not make the required finding regarding the intentional and 'willful' nature of the conversion, and therefore, any *inference* of malice was premature." *Id.* (emphasis added).

In this case, in contrast with *Thiara*, the Bankruptcy Court did not infer or imply malice based on the nature of the wrongful act (i.e., slander *per se*) done willfully (i.e., with intent to injure). Instead, the Bankruptcy Court found that all four elements of malice had already been satisfied under the state court Default Judgment, so collateral estoppel applied as to the "maliciousness" prong. *Thiara*'s holding that a court must first find willfulness in order to infer malice therefore does not apply here, and the Bankruptcy Court's finding of malice in the 2019 Summary Judgment Order was not premature.

In further support of his argument that the Bankruptcy Court made a premature finding of malice, Sangha places substantial significance on a footnote in the Ninth Circuit's opinion in this case. In providing background on the Bankruptcy Court's 2014 findings on the "willful" and "maliciousness" prongs, the Ninth Circuit explained in a footnote that "[t]he 'willful" and 'malicious' intent requirements are conjunctive and require separate analyses. 'Willful' intent must be established before 'malicious' intent may be concluded." *In re Sangha*, 678 F. App'x at 562 (citing *Su*, 290 F.3d at 1146; *Thiara*, 285 B.R. at 434). Sangha uses this footnote to argue that the Ninth Circuit "mandate[d] that 'willful intent must be established before malicious intent may be concluded'" on remand. (Appellant's Reply Br., Docket No. 18 at 2).

Sangha assigns too much weight to this footnote. The Ninth Circuit expressly remanded for the Bankruptcy Court to determine whether the "willfulness" prong was met; it did not direct the Bankruptcy Court to reconsider the "maliciousness" prong. Moreover, other cases from this circuit indicate that a finding of maliciousness may precede a willfulness finding. In *Plyam*, for example, the BAP expressly held that while

a punitive damages award under CC § 3294, standing alone, is not sufficient to establish willfulness,

> [t]he creditor is still entitled to seek issue preclusion on other issues … including the maliciousness requirement of § 523(a)(6). Under those circumstances, the bankruptcy court need only try the singular issue of the debtor's intent for the purposes of § 523(a)(6) willfulness; that is, whether the debtor subjectively intended to cause injury or was substantially certain that injury would follow. It need not retry the entire state court case a second time.

*Plyam*, 530 B.R. at 470. Additionally, in *In re Arden*, the BAP reversed a bankruptcy court's grant of summary judgment based on a state court award of punitive damages for malicious prosecution because "a California punitive damages award does not necessarily establish 'willfulness' for § 523(a)(6) purposes," but it left intact the bankruptcy court's finding of maliciousness based on the same award. 2015 WL 4068962, at *11 (B.A.P. 9th Cir. July 2, 2015) ("[W]e have no quarrel with the bankruptcy court's conclusion that the 'malicious' element was established, but although we acknowledge that it is a very close question, we disagree that the 'willful' standard was necessarily met.").

Here, the Bankruptcy Court did precisely what the BAP contemplated in *Plyam* and what it directed another bankruptcy court to do in *Arden*: it applied collateral estoppel to the "maliciousness" prong based on the Default Judgment and then held a trial to determine whether the "willfulness" prong was met. The Bankruptcy Court did not err in finding malice before willfulness.

### B. Finding of Subjective Intent to Injure

Sangha also argues that the Bankruptcy Court erred by finding that Sangha subjectively intended to injure Schrader, fulfilling the willfulness prong. (Appellant's Opening Br. at 35–36). Sangha contends that the Bankruptcy Court ignored clear evidence that Sangha told the truth during his interview with SJFD and therefore could not have intended to injure Schrader. (*Id.* at 35).

11

Once again, there is no error here. Sangha's argument rests on the false premise that the Bankruptcy Court found Sangha lied during his interview with SJFD. The Bankruptcy Court made no such finding; it merely applied issue preclusion to the state court's entry of default judgment against Sangha on allegations of slander *per se*. Sangha does not argue that issue preclusion was unavailable on the "willfulness" prong; instead, he seeks to relitigate the merits of the underlying state court judgment. As the Bankruptcy Court explained "*ad nauseam*," however, "a state court already found that the statements at issue were false," and "the actual truth of the statements was not a defense" to be raised at trial. (Mem. at 43). Nor may it be raised on this appeal. In light of the state court's finding that Sangha's statements were false, the only issue for trial was whether Sangha *knew* his statements were false when he made them. Sangha's admission at trial that he knew whether his statements were true or false was enough to establish willfulness, and the Bankruptcy Court did not err in finding as much.

### C. Issue Preclusion as to "Maliciousness"

Finally, Sangha argues that the Bankruptcy Court abused its discretion in applying collateral estoppel to establish the "maliciousness" prong. (Appellant's Opening Br. at 37–41). Courts must "review *de novo* the bankruptcy court's determination that issue preclusion was available." *Plyam*, 530 B.R. at 461–62 (citation omitted). "If issue preclusion was available," however, a court must "review the bankruptcy court's application of issue preclusion for an abuse of discretion." *Id.* "A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings of fact are illogical, implausible or without support in the record." *In re Boyce*, 2018 WL 6565685, at *6 (B.A.P. 9th Cir. Dec. 12, 2018) (citation omitted).

Here, Sangha does not argue that issue preclusion was unavailable; rather, he argues that the Bankruptcy Court abused its discretion in deciding to apply issue preclusion after analyzing the relevant policy factors. (Appellant's Opening Br. at 37–41). In California, after a bankruptcy court finds the requirements for issue preclusion are satisfied, it must still "conduct an 'inquiry into whether imposition of issue

preclusion in the particular setting would be fair and consistent with sound public policy' before applying issue preclusion." *In re Delannoy*, 615 B.R. 572, 582 (B.A.P. 9th Cir. 2020), *aff'd,* 852 F. App'x 279 (9th Cir. 2021) (quoting *In re Khaligh*, 338 B.R. 817, 824–25 (9th Cir. BAP 2006)). "Three fundamental policies should be considered: 'preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.'" *Id.* (quoting *Lucido v. Superior Ct.*, 51 Cal. 3d 335, 343 (1990)).

First, Sangha argues that the Bankruptcy Court's decision to apply collateral estoppel undermines judicial integrity because Sangha presented the Bankruptcy Court with new evidence that Schrader committed perjury to obtain the Default Judgment against him. (Appellant's Opening Br. at 39–40). As the Bankruptcy Court explained, however, California courts will not set aside a judgment based on allegations of perjury. (Mem. at 23–24 (citing *In re Roark*, 2019 WL 3842998 (S.D. Cal. 2019); *Cedars-Sinai Med. Ctr. v. Superior Court*, 18 Cal. 4th 1, 10 (Cal. 1998); *U.S. v. Throckmorton*, 98 U.S. 61, 68 (1878)). Doing so "would lead to the elimination of the application of the collateral estoppel doctrine to default judgments, since it essentially affords a defendant a second opportunity to litigate the merits of the allegations in the underlying dispute." (*Id.* at 23). Further, the Bankruptcy Court cited *In re Baldwin*, 249 F.3d 912, 920 (9th Cir. 2001), for the proposition that, "[w]ith regard to the integrity of the judicial system, the California Supreme Court directs us to inquire whether eliminating the possibility of inconsistent verdicts—which would follow from the application of collateral estoppel—would undermine or enhance the public's confidence in the judicial system." (Mem. at 19). The Bankruptcy Court determined that, as in *Baldwin*, relitigating the issue already decided in state court would undermine confidence in the judicial system. (*Id.*). This determination was not "illogical, implausible or without support in the record." *Boyce*, 2018 WL 6565685, at *6.

Second, Sangha argues that the application of issue preclusion did not promote judicial economy because it did not reduce the length of trial; nor could it have

13

encouraged Sangha's participation in the state court action because Sangha was the victim of legal malpractice in that action. (Appellant's Opening Br. at 40–41). This argument also fails. Even if it were true that the Bankruptcy Court's application of issue preclusion did not reduce the length of trial, Sangha has pointed to no authority suggesting that this Court could reverse based on the Bankruptcy Court's pre-trial reasoning that "relitigating the issue resolved in State Court would require additional judicial resources." (Mem. at 21). As to the malpractice of Sangha's attorney, the Bankrupty Court explained that Sangha's second attorney in the state court action had already been substituted in prior to Schrader's filing of the Motion for Default Judgment. (*Id.* at 28). Moreover, Sangha had the ability to appeal the Default Judgment, but chose not to. Sangha's first attorney's malpractice consequently cannot be blamed for Sangha's failure to participate in the state court action. (*Id.* at 28).

Third, and finally, Sangha argues that the application of collateral estoppel as to maliciousness encourages, rather than discourages, vexatious litigation because Schrader has hindered Sangha throughout this action and the state court action. (Appellant's Opening Br. at 46). Again, as the Bankruptcy Court explained, Sangha had "a 'full and fair opportunity to litigate the issue in the state court proceedings,'" and "'[t]here is no indication in the record that those proceedings violated [Sangha's] right to due process, nor does [Sangha] allege any constitutional infirmity.'" (Mem. at 21 (quoting *Baldwin*, 249 F.3d at 920)).

In sum, the Bankruptcy Court neither "applie[d] the wrong legal standard" nor made "findings of fact [that] are illogical, implausible or without support in the record." *Boyce*, 2018 WL 6565685, at *6. On the contrary, the Bankruptcy Court thoroughly examined the facts and history of this case along with California authorities in determining that public policy considerations weighed in favor of applying collateral estoppel. *Cf. In re Italiane*, 632 B.R. 662, 678 (B.A.P. 9th Cir. 2021), *aff'd,* No. 21-60054, 2022 WL 17412881 (9th Cir. Dec. 5, 2022) (affirming application of issue preclusion where bankruptcy court "made a reasoned, detailed analysis explaining why

14

each consideration supported application of issue preclusion"); *Boyce*, 2018 WL 6565685, at *8 (affirming application of issue preclusion where "the bankruptcy court duly considered the fairness and policy concerns underlying the issue preclusion doctrine"). The Bankruptcy Court therefore did not abuse its discretion in giving collateral estoppel effect to the Default Judgment.

### III. CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the Bankruptcy Court's Judgment excepting the debt owed to Schrader under the state court Default Judgment from discharge under § 523(a)(6).

**IT IS SO ORDERED.**

Dated: July 11, 2024

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE